UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DAVID PANNELL, | ) |
| Petitioner, | ) ) ) |
| v. | ) ) No. 1:20-cv-01834-JMS-DML |
| WENDY KNIGHT, | ) ) ) |
| Respondent. | ) ) |

**ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS
AND DIRECTING FINAL JUDGMENT**

David Pannell's petition for a writ of habeas corpus challenges his conviction in prison disciplinary case ISF 19-12-0373. For the reasons explained in this Order, Mr. Pannell's petition is **denied**.

**A. Overview**

Prisoners in Indiana custody may not be deprived of good-time credits or of credit-earning class without due process. *Ellison v. Zatecky,* 820 F.3d 271, 274 (7th Cir. 2016); *Scruggs v. Jordan,* 485 F.3d 934, 939 (7th Cir. 2007); *see also Rhoiney v. Neal*, 723 F. App'x 347, 348 (7th Cir. 2018). The due process requirement is satisfied with: 1) the issuance of at least 24 hours advance written notice of the charge; 2) a limited opportunity to call witnesses and present evidence to an impartial decision-maker; 3) a written statement articulating the reasons for the disciplinary action and the evidence justifying it; and 4) "some evidence in the record" to support the finding of guilt. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985); *see also Wolff v. McDonnell,* 418 U.S. 539, 563-67 (1974).

### B. Disciplinary Proceeding

#### 1. Conduct Report and Witness Statement

Officer Bradley charged Mr. Pannell with a violation of Indiana Department of Correction ("IDOC") Adult Disciplinary Code A-102, battery:

> On 12/19/2019 at approx. 0620 in 17N I Officer Bradley 381 was doing a security check when I heard a noise come from the alpha side dayroom. When I turned around I saw Offender Pannell, David DOC: 963265 and Offender Griggs, Jaramiah DOC: 250931 pushing one another into the fan. Offender Griggs then struck Offender Pannell with a closed fist in the facial area. At this time I called a 10-10 on radio and ordered them to stop. The offenders then hit case workers door when Offender Pannell pulled two weapons from inside his shirt and began to strike Offender Griggs in a downward motion. I pulled by O.C. and gave the verbal warning 'O.C' before I administered a 1 second burst of chemical agent on the target area of both offenders. QRT arrived, placed the offenders in mechanical restraints, and removed them from dormitory. Offender Pannell and Griggs were identified by their state ID wristbands.

Dkt. 1-1 (cleaned up). The record includes a photograph of a confiscated weapon. Dkt. 8-3.

Officer Sullivan wrote a supporting witness statement:

> While I was doing paperwork and Officer Bradley was walking through the dorm 17N, we both heard a bang come from the day room on the A side of 17North. When I looked up I saw Offender Pannell DOC# 936265 fighting with Offender Griggs DOC# 250931. As I got up from behind the podium, I keyed up on the radio to call out the fight, but Officer Bradley was already doing so. I yelled for the two offenders to 'break it up' but they kept on fighting. I yelled to everybody else 'Get on your bunks, now.' When I looked back over to the fight I saw the two offenders that were fighting, Pannell and Griggs on the floor. That is when I saw Offender Willingham DOC #263880 lift up his left leg and attempt to put his foot down with force onto Offender Pannell's head. Shortly after QRT was on scene and detained the offenders involved in the incident. All of this occurred at 12/19/2019 at 0620 am in dorm 17 North.

Dkt. 1-1. (cleaned up).

#### 2. Notice of Charge and Requests for Evidence

Mr. Pannell was notified of the charge and pled not guilty. Dkt. 8-4. He changed his mind several times regarding the evidence he wanted to present at his disciplinary hearing. First, he

asked to call Sgt. Myers and Sgt. Roach as witnesses, but he later withdrew this request. *Id.*; dkt. 8-5. Then, he asked to call Officer Sullivan as a witness. Dkt. 8-5. He believed Officer Sullivan would testify that he witnessed a fight between Mr. Pannell and Offender Griggs, that he did not see Mr. Pannell use any weapons or strike Griggs in a downward motion, and that he did not see O.C. spray administered. *Id.* Next, he asked to call Officer Bradley as a witness. *Id.* He believed Officer Bradley would testify that he witnessed the fight but that he (1) did not provide detailed information about the weapons that were used or the area of Offender Griggs' body that was hit; (2) did not document that Griggs had any medical injuries; and (3) that the weapons were confiscated and properly stored. *Id.* Finally, he asked to present the conduct reports issued to the other offenders regarding the altercation. *Id.*

### 3. Evidence Presented at Disciplinary Hearing

The disciplinary hearing officer ("DHO") considered the conduct report and Officer Sullivan's written witness statement. The DHO also considered Sgt. Myers's written statement that he did not confiscate any weapon, but that he did observe "Offender Pannell with a pointed object appearing to be a weapon in his left hand . . . [and] a separate pointed object appearing to be a weapon laying on the floor near Offender Pannell." Dkt. 8-10. Officers Bradley and Sullivan gave live testimony, which the DHO considered as well. Sgt Roach stated that he was not on shift during this time and had no recollection of the event. Dkt. 8-11.

A summary of the video evidence documented that Mr. Pannell was observed in a physical altercation with another offender, and the video showed Mr. Pannell moving his arm toward the other offender "in a stabbing motion." Dkt. 8-9. The Court has reviewed the video, filed *ex parte*, and finds that the video is consistent with the summary. Dkt. 12.

Mr. Pannell submitted a three-page statement arguing that Officer Bradley had not shown the proper elements of how Mr. Pannell's conduct met the definition of battery. Dkt. 8-7. For example, he argued that Officer Bradley did not describe the types of weapons he possessed and the extent of Offender Griggs' injury. *See* dkt. 8-8. Mr. Pannell also objected to the staff witness statements that he originally requested but later withdrew. Dkt. 8-7.

The DHO provided a written statement of the evidence considered at the hearing. The DHO marked that he relied upon staff reports and video evidence and found Mr. Pannell guilty based on the same. *Id.* Mr. Pannell's sanctions included the loss of 180 days good-time credit and a credit class demotion. *Id.*

Mr. Pannell's administrative appeals were unsuccessful. Dkt. 8-12; dkt. 8-13.

**C. Analysis**

Mr. Pannell outlines several grounds in his petition that the Court restates and consolidates as: (1) whether there is sufficient evidence to support this charge; (2) whether he was denied material exculpatory evidence; and (3) whether the DHO's written statement of his findings was adequate. *See* dkt. 1.

**1. Sufficiency**

Mr. Pannell argues that the DHO relied on a false conduct report because it was in contrast to Officer Sullivan's witness statement. *Id.* at 15. He argues that Officer Bradley's narrative did not establish that the elements were met for a battery charge, because it did not describe the weapons, the part of Mr. Griggs' body that was battered, or the extent of his injuries. *Id.* at 15-16. He also alleges that Officer Bradley gave false live testimony that the DHO relied upon that contradicted

Officer Sullivan's testimony[1] that Sullivan witnessed the entire fight and saw no weapons. *Id.* at 17. The crux of his argument, as illustrated by his reply, is that there is no evidence to support that Mr. Pannell had weapons or "battered" Offender Griggs with them to cause him injury. Dkt. 28. The Court construes all of these arguments as challenges to the sufficiency of the evidence.

"[A] hearing officer's decision need only rest on 'some evidence' logically supporting it and demonstrating that the result is not arbitrary." *Ellison*, 820 F.3d at 274. The "some evidence" standard is much more lenient than the "beyond a reasonable doubt" standard. *Moffat v. Broyles*, 288 F.3d 978, 981 (7th Cir. 2002). "[T]he relevant question is whether there is *any evidence* in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455–56 (emphasis added); *see also Eichwedel v. Chandler*, 696 F.3d 660, 675 (7th Cir. 2012) ("The some evidence standard . . . is satisfied if there is any evidence in the record that could support the conclusion reached by the disciplinary board.") (citation and quotation marks omitted).

The "'some evidence' standard" is "a 'meager threshold.'" *Jones v. Cross*, 637 F.3d 841, 849 (7th Cir. 2011) (quoting *Scruggs*, 485 F.3d at 939). Once the Court finds "some evidence" supporting the disciplinary conviction, the inquiry ends. *Id.* This Court may not "reweigh the evidence underlying the hearing officer's decision" or "look to see if other record evidence supports a contrary finding." *Rhoiney*, 723 F. App'x at 348 (citing *Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000)).

---

[1] Mr. Pannell recounts his own transcript of Officer Sullivan's live testimony, in which he claims that when asked if the officer believed there was sufficient evidence to show that Mr. Pannell committed battery with a weapon, Officer Sullivan said "no." Dkt. 1 at 10-14. This argument is unavailing, even if this is the officer's testimony, it is not inconsistent with his witness statement that he did not see weapons, and as the Court will further discuss, Code A-102 does not require the use of weapons.

5

The version of Code A-102, in effect in December 2019 and applicable to Mr. Pannell's conduct, prohibits an offender from "[k]nowingly or intentionally touching another person in a rude, insolent, or angry manner; or in a rude, insolent, or angry manner placing any bodily fluid or bodily waste on another person." Dkt. 8-14 at 1. Though Mr. Pannell cited a now outdated 2015 definition of battery "with a weapon" or "inflicting serious bodily injury," he agrees that the 2019 definition is the one applicable to his charge. Dkt. 1 at 16; dkt. 28 at 5. Still, Mr. Pannell's argues that prison officials needed to prove that he used a weapon and injured a victim to find him guilty of battery.

Contrary to Mr. Pannell's argument, these are not elements of battery under the version of the Code in effect at the time of the incident. Thus, any arguments that Mr. Pannell makes about not possessing weapons and the conduct report being void of description of the weapons or its lack of documentation of Offender Griggs' injuries, all fail.

Ultimately, Mr. Pannell does not dispute that he engaged in a physical fight with Offender Griggs. Dkt. 1 at 6. Mr. Pannell's argument that no evidence showed him touching or making contact with Offender Griggs, is belied by the record. Officer Bradley described the details of the incident—he observed the two offenders, identified by their ID cards, pushing each other and fighting. Then, Bradley observed Mr. Pannell pull out two weapons and make downward striking motions toward Offender Griggs. Dkt. 8-1. To the extent that Mr. Pannell argues that pushing and shoving in a fight does not rise to a level of battery, his argument fails because specific forms of touching, such as a closed fist punch, for example, are not required. Any knowing or intentional touching in a rude, insolent, or angry manner could fit this charge.

The conduct report alone is "some evidence" that Mr. Pannell committed battery. Officer Bradley's witness statement, Officer Sullivan's witness statement, and the video of the incident provide additional evidence of guilt. Mr. Pannell's argument that some of the witnesses' statements are false is a request to reweigh the evidence, which the Court cannot do. *See Calligan v. Wilson*, 362 F. App'x 543, 545 (7th Cir. 2009) (citing *Hill*, 472 U.S. at 455; *Scruggs*, 485 F.3d at 941.

To the extent that Mr. Pannell believes these facts might better fit another Disciplinary Code provision, such as fighting, that is not a question for this Court. There is some evidence supporting the DHO's decision. That is all due process requires, and it ends this Court's inquiry. *Jones*, 637 F.3d at 849.

### 2. Denial of Evidence

Mr. Pannell argues that there were several pieces of evidence presented at the hearing, and the DHO's failure to consider his statement and Officer Sullivan's written statement denied him the right to present evidence to "buttress his defense" that he did not commit battery. Dkt. 1 at 19; dkt. 28 at 10-11. He argues that the DHO only relied upon the staff reports and video – failing to consider the live testimony of each officer and Mr. Pannell's written statement. *Id.*

Due process requires "prison officials to disclose all material exculpatory evidence," unless that evidence "would unduly threaten institutional concerns." *Jones*, 637 F.3d at 847. Evidence is exculpatory if it undermines or contradicts the finding of guilt, *see id.*, and it is material if disclosing it creates a "reasonable probability" of a different result, *Toliver v. McCaughtry*, 539 F.3d 766, 780–81 (7th Cir. 2008).

As the petitioner, Mr. Pannell faces the burden of establishing that any evidence he was denied was material and exculpatory. *See Piggie v. Cotton*, 344 F.3d 674, 678 (7th Cir. 2003) (noting the petitioner did not "explain how [the requested witness's] testimony would have helped

7

him" and thus "the district court properly denied relief" on the petitioner's claim that he was wrongfully denied a witness).

The record shows that Mr. Pannell's evidentiary requests were honored—Officer Bradley and Officer Sullivan gave live testimony, Officer Sullivan provided a written statement, the video footage was reviewed, and other witness statements were obtained from staff that he initially requested, but later rescinded.

The Court understands Mr. Pannell's argument to be that the DHO did not consider all of the evidence presented. Mr. Pannell argues that the DHO only marked the boxes on the hearing report form for staff reports and video. *See* dkt. 8-7. And so, Mr. Pannell argues that the DHO did not consider anything in the other boxes—physical evidence, statement of offender, and evidence from witnesses. More specifically, he contends that the DHO did not consider the live testimony, Officer Sullivan's written statement, or Mr. Pannell's own statement, and this violated due process.

In fact, the DHO notated in Mr. Pannell's offender's comment section of the form, that his statement was attached to the hearing report, that the live witness testimony had occurred. *Id.* The Court notes and the respondent correctly points out that Mr. Pannell's arguments are inconsistent because, for example, in some places Mr. Pannell argues that the DHO did not consider Officer Bradley's testimony but in other places says the DHO relied on Bradley's "false testimony." Dkt. 1 at 17-19. And in some places in the briefing, Mr. Pannell states that the DHO also did not consider Officer Sullivan's written statement, but the DHO checked that he relied upon "staff reports," which could reasonably encompass Officer Sullivan's statement. Dkt. 28 at 10.

Even if the DHO failed to consider the live testimony or Officer Sullivan's written statement, that would not matter because none of this evidence was exculpatory. All of this evidence corroborates that Mr. Pannell was involved in a physical altercation with Offender

8

Griggs. As the Court has previously discussed, prison officials did not need to prove that Mr. Pannell used a weapon or caused physical injury.

Finally, Mr. Pannell's own statement at the hearing was not exculpatory. His statement merely set out his erroneous sufficiency of the evidence arguments regarding weapons and injury. Dkt. 8-8.

Accordingly, Mr. Pannell is not entitled to habeas relief on this ground.

### 3. DHO's Written Statement

Mr. Pannell argues that the DHO's written statement supporting his guilty finding was inadequate because it failed to articulate what evidence was relied upon and how that supported his charge. Dkt. 1 at 20. "Due process requires that an inmate subject to disciplinary action is provided 'a written statement by the factfinders as to the evidence relied on and the reasons for the disciplinary actions.'" *Scruggs*, 485 F.3d at 941 (quoting *Forbes v. Trigg*, 976 F.2d 308, 318 (7th Cir. 1992)). The written-statement requirement is not "onerous," as the statement "need only illuminate the evidentiary basis and reasoning behind the decision." *Id.* The level of detail required in a hearing officer's written statement "will vary from case to case depending on the severity of the charges and the complexity of the factual circumstances and proof offered by both sides." *Arce v. Ind. Parole Bd.*, 596 F. App'x 501, 503 (7th Cir. 2015) (quoting *Culbert v. Young*, 834 F.2d 624, 631 (7th Cir. 1987)).

The DHO's explanation—that Mr. Pannell was guilty based on the staff reports and video—clears this minimal threshold. Accordingly, Mr. Pannell is not entitled to habeas relief on this ground.

### D. Conclusion

The touchstone of due process is protection of the individual against arbitrary action of the government." *Wolff*, 418 U.S. at 558. There was no arbitrary action in any aspect of the charge, disciplinary proceedings, or sanctions involved in the events identified in this action, and there was no constitutional infirmity in the proceeding which entitles Mr. Pannell to the relief he seeks. Accordingly, Mr. Pannell's petition for a writ of habeas corpus is **denied** and this action is **dismissed** with prejudice.

Judgment consistent with this Order shall now issue.

**IT IS SO ORDERED.**

Date: 10/4/2021

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

DAVID PANNELL
963265
PENDLETON - CORRECTIONAL INDUSTRIAL FACILITY
CORRECTIONAL INDUSTRIAL FACILITY
Inmate Mail/Parcels
5124 West Reformatory Road
PENDLETON, IN 46064

Frances Hale Barrow
INDIANA ATTORNEY GENERAL
frances.barrow@atg.in.gov